Filed 10/3/24  P. v. Villery CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HENRY LOYD VILLERY,<br><br>    Defendant and Appellant. | B329554<br><br>Los Angeles County Super. Ct. No. TA060012 |

APPEAL from a post judgment order of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Henry Loyd Villery walked out of a house with a shotgun, aimed it at car passenger Reginald Anderson, and pulled the trigger. Anderson was in a car idling by the curb. The first blast hit Anderson, and his driver sped away. Villery kept firing as the car departed.

This was spring 2001. Anderson and his driver were on their way to a check cashing place. They stopped to pick up one "Nicole." Nicole got in the back seat. Anderson explained, "Then [Villery] came out of the house with the shotgun and just shot me."

Neither the prosecution nor the defense plumbed the motive for Villery's gun attack. Anderson testified only as to Villery. No one asked him about his relationship with Villery. The preliminary hearing did not explore relationships, but instead focused on bare physical events:

Q: "What was he carrying?"

A: "A shotgun."

Q: "After you saw him come out with a shotgun, what happened?"

A: "He just shot me."

Q: "How far was he from you?"

A: "Say from about 10 feet, 15 feet, close range."

The blast hit Anderson in the shoulder and penetrated his upper chest.

The driver reacted by hitting the gas; she "took off." Villery fired three more times. The driver, Anderson, and Nicole fled in the car.

The shots put Anderson in the hospital for 26 days. He had three surgeries.

Villery pleaded no contest to violations of Penal Code sections 664, 187(a), and 459: the 2001 attempted murder of Anderson, and a 1998 burglary of a place occupied by one James Thomas, "not an accomplice." The amended information alleged that Villery, in committing the burglary, personally inflicted great bodily injury on Thomas and that Villery used a handgun.

As part of the plea colloquy, Villery also pleaded no contest to the special allegation that he personally and intentionally discharged a shotgun. His counsel joined in the plea and stipulated to a factual basis.

The court sentenced Villery to 31 years and four months.

Two decades later, on December 14, 2021, Villery signed a four-page handwritten document under penalty of perjury. The latter part of this document is captioned "Declaration." Villery's declaration made four points.

1. An information alleged Villery committed attempted murder.
2. Villery pleaded no contest to this charge.
3. Villery could not presently be convicted of attempted murder because of changes in the law effective 2019 and 2022.
4. Villery asked the court to appoint counsel for him and to issue a show cause order.

On August 11, 2022, Villery filed a check-the-box petition for resentencing asserting he was convicted of "murder, attempted murder, or manslaughter." He requested appointment of counsel.

The prosecution opposed his motion in January 2023. The reasoning was Villery had been prosecuted as the actual perpetrator and not as an aider and abettor. "There was no evidence presented at the preliminary hearing of another perpetrator being involved in the attempted murder."

The court held a hearing on March 29, 2023 at which Villery's counsel, but not Villery, appeared. An attorney for the prosecution also appeared. The court said that, on the basis of the petition and the prosecution's response, Villery "was prosecuted as the actual perpetrator who acted with actual malice." The court denied Villery's petition.

We affirm this ruling on the logic of *People v. Mares* (2024) 99 Cal.App.5th 1158, review granted May 1, 2024, S284232 (*Mares*). The Legislature enacted resentencing provisions to address issues of accomplice liability. (*Id.* at p. 1164.) There was no accomplice liability here. This shotgunning was the work of one person — Villery and Villery alone — so far as the record of conviction shows. Villery's handwritten declaration did not contest this point.

"Here, we need not credit the truth of any fact in the preliminary hearing transcript. What matters is that the record supports no theory other than those where [Villery] was the actual [attempted] killer, acting with no accomplice. . . . No facts support a theory that he was an accomplice to [an attempted] murder committed by some other person." (*Mares, supra*, 99 Cal.App.5th at pp. 1167–1168, review granted S284232 May 1, 2024, S284232.)

4

There is sharp disagreement in the intermediate appellate courts about whether this approach is the right one.  (E.g., *People v. Williams* (2024) 103 Cal.App.5th 375, 403.)  Our Supreme Court will resolve this disagreement.

## DISPOSITION

Affirmed.


WILEY, J.

I concur:


GRIMES, J.

**STRATTON, P.J., Dissenting**.

Adopting the analyses of *People v. Estrada* (2024) 101 Cal.App.5th 328 and *People v. Williams* (2024) 103 Cal.App.5th 375, I find the trial court erred in considering the preliminary hearing transcript to deny the petition for resentencing.

I note Penal Code section 1172.6 does not provide for any type of evidentiary hearing at the prima facie stage of the sentencing recall petition process. Section 1172.6, subdivision (d)(3) reserves the evidentiary hearing for after the prima facie determination has been made and an order to show cause has been issued. Only at that point do both parties have the option to present new and additional evidence on whether the People can prove, beyond a reasonable doubt, that the petitioner can still be found guilty of murder, attempted murder or manslaughter despite the changes made to Penal Code sections 188 and 189.

Those who advocate for admitting the preliminary hearing transcript into evidence for the prima facie determination contend that if a petitioner has any evidence rebutting the transcript, they can just as easily submit it to the trial court making the prima facie determination. However, without statutory authority for such a new two-step evidentiary process, that contention just repeats the error that was the two-step prima facie construct rejected by our Supreme Court in *People v. Lewis* (2021) 11 Cal.5th 952, 962 [We "read subdivision (c) to describe only a single prima facie showing."].) I read Penal Code section 1172.6, subdivision (d) to describe only a single evidentiary hearing.

And how about the alleged waste of judicial resources and inefficiency associated with allowing an evidentiary hearing

where the preliminary hearing transcript "clearly" shows a petitioner ineligible for relief?  Judicial waste and inefficiency were grounds proffered in support of the disfavored two-step prima facie construct—and soundly thrashed by the Court in *People v. Lewis, supra,* 11 Cal.5th at page 968 ["Indeed, the legislative history of Senate Bill [No.] 1437 demonstrates the Legislature's full awareness of its potential impact on judicial resources."].  Just as the *Lewis* Court declined to rewrite the statute, I see no avenue to change Penal Code section 1172.6's procedures without legislative consent.




STRATTON, P. J.

2